# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANETTA SCONIERS, | ) 1:08-cv-1288-LJO-SMS |
| | ) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATION TO |
| | ) DISMISS SOME CLAIMS IN |
| | ) PLAINTIFF'S COMPLAINT WITHOUT |
| v. | ) LEAVE TO AMEND AND TO DISMISS |
| | ) OTHER CLAIMS WITH LEAVE TO AMEND |
| CLARENCE WHITMORE, SR., et | ) (DOC. 1) |
| al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

Plaintiff is proceeding pro se and in forma pauperis with an action for damages and other relief concerning alleged civil rights violations. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-304.

Pending before the Court is Plaintiff's complaint, which was filed on September 2, 2008.

I. Screening the Complaint

A. Legal Standards

In cases wherein the plaintiff is proceeding in forma pauperis, the Court is required to screen cases and shall dismiss

1

the case at any time if the Court determines that the allegation

of poverty is untrue, or the action or appeal is frivolous or

malicious, fails to state a claim on which relief may be granted,

or seeks monetary relief against a defendant who is immune from

such relief. 28 U.S.C. 1915(e)(2).

Fed. R. Civ. P. 8(a) provides:

> A pleading which sets forth a claim for relief,
> whether an original claim, counterclaim, cross-
> claim, or third-party claim, shall contain
> (1) a short and plain statement of the grounds
> upon which the court's jurisdiction depends,
> unless the court already has jurisdiction and
> the claim needs no new grounds of jurisdiction
> to support it, (2) a short and plain statement
> of the claim showing that the pleader is entitled
> to relief, and (3) a demand for judgment for
> the relief the pleader seeks. Relief in the
> alternative or of several different types
> may be demanded.

"Rule 8(a)'s simplified pleading standard applies to all

civil actions, with limited exceptions," none of which applies to

section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506,

512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a

complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief . . . ." Fed. R.

Civ. P. 8(a). "Such a statement must simply give the defendant

fair notice of what the plaintiff's claim is and the grounds upon

which it rests." Swierkiewicz, 534 U.S. at 512. However, "the

liberal pleading standard... applies only to a plaintiff's

factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9

(1989).

In reviewing a complaint under this standard, the Court must

accept as true the allegations of the complaint in question,

Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740

1   (1976), construe the pro se pleadings liberally in the light most

2   favorable to the Plaintiff, <u>Resnick v. Hayes</u>, 213 F.3d 443, 447

3   (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor,

4   <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969).

5       Although a complaint attacked by a Rule 12(b)(6) motion to

6   dismiss does not need detailed factual allegations, a plaintiff

7   does not meet his or her obligation to provide the grounds of

8   entitlement to relief by supplying only conclusions, labels, or a

9   formulaic recitation of the elements of a claim. <u>Bell Atlantic</u>

10  <u>Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). Factual

11  allegations must be sufficient, when viewed in light of common

12  experience, to raise a right to relief above the speculative

13  level and to provide plausible grounds to suggest and infer the

14  element, or to raise a reasonable expectation that discovery will

15  reveal evidence of the required element. <u>Bell</u>, 127 S.Ct. at 1965.

16  Once a claim has been stated adequately, it may be supported by

17  showing any set of facts consistent with the allegations of the

18  complaint, and it may not be dismissed based on a court's

19  assessment that the plaintiff will fail to find evidence to

20  support the allegations or prove the claim to the satisfaction of

21  the finder of fact. <u>Bell</u>, 127 S.Ct. at 1969.

22      If the Court determines that the complaint fails to state a

23  claim, leave to amend should be granted to the extent that the

24  deficiencies of the complaint can be cured by amendment. <u>Lopez v.</u>

25  <u>Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Dismissal

26  of a pro se complaint for failure to state a claim is proper only

27  where it is obvious that the Plaintiff cannot prevail on the

28  facts that he has alleged and that an opportunity to amend would

1  be futile. Lopez v. Smith, 203 F.3d at 1128.

2      A claim is frivolous if it lacks an arguable basis either in

3  law or fact. Neitzke v. Williams, 490 U.S. 319, 324 (1989). A

4  frivolous claim is based on an inarguable legal conclusion or a

5  fanciful factual allegation. Id. A federal court may dismiss a

6  claim as frivolous if it is based on an indisputably meritless

7  legal theory or if the factual contentions are clearly baseless.

8  Id.

9      The test for malice is a subjective one that requires the

10 Court to determine whether the applicant is proceeding in good

11 faith. Kinney v. Plymouth Rock Squab. Co., 236 U.S. 43, 46

12 (1915); see Wright v. Newsome, 795 F.2d 964, 968 n. 1 (11th Cir.

13 1986). A lack of good faith is most commonly found in repetitive

14 suits filed by plaintiffs who have used the advantage of cost-

15 free filing to file a multiplicity of suits. A complaint may be

16 inferred to be malicious if it suggests an intent to vex the

17 defendants or abuse the judicial process by relitigating claims

18 decided in prior cases, Crisafi v. Holland, 655 F.2d 1305, 1309

19 (D.C.Cir. 1981); if it threatens violence or contains

20 disrespectful references to the Court, id.; or if it contains

21 untrue material allegations of fact or false statements made with

22 knowledge and an intent to deceive the Court, Horsey v. Asher,

23 741 F.2d 209, 212 (8th Cir. 1984).

24      B. Plaintiff's Complaint

25      Plaintiff alleges that she is a party to a residential lease

26 and option to purchase premises located at 1829 West Church

27 Avenue in Fresno, California, and that this agreement continues

28 in force. Many of the defendants, including Defendant Clarence

4

Whitmore, Sr., Clarence Whitmore, Jr., Zachary Sconiers, Rita Sconiers Washington, Nathaniel Sconiers, Dolores Sconiers Moseley, Frankie Sconiers Freitas, Pricilla Sconiers Dorsey, Jack Sconiers, Jr., and Phyllis Sconiers Watt, are heirs of decedent Rosie Lee Sconiers, who owned the premises and entered into the lease and option to purchase with Plaintiff. These defendants will be referred to as the "heirs."

After the death of decedent Rosie Lee Sconiers, Defendant Frankie Sconiers Freitas was appointed as the administrator of the estate. The heirs engaged in conduct and undertook various actions that were and are hostile to Plaintiff's possession of the premises.

On or about October 17, 2007, Defendants Frankie Sconiers Freitas and Jack Sconiers, Jr., attempted to enter the property to obtain the eyeglasses of Defendant Rita Sconiers Washington, who, they represented, had been locked out; they had a petition for probate and letters testamentary purporting to give to them and to the heirs ownership and possession of the premises.[1] Plaintiff called Defendant Fresno County Sheriff's Department to report that unlawful entry was being attempted. Deputy Sheriff John Capriola arrived and told Freitas and Jack that they could enter. The participation of Defendant Stephen Wilkins is unclear, but he was alleged to be an agent of the sheriff's department with supervisory authority who was being sued in his individual and official capacity and who had ratified the conduct of

---

[1] Plaintiff alleges that Defendant Clarence Whitmore, Sr., Clarence Whitmore, Jr., Zachary Sconiers, Rita Sconiers Washington, Nathaniel Sconiers, Dolores Sconiers Moseley, Frankie Sconiers Freitas, Pricilla Sconiers Dorsey, Jack Sconiers, Jr., and Defendants Phyllis Sconiers Watt (the heirs), along with the other defendants, wrongfully and unlawfully terminated her tenancy at the premises.

Capriola and Buenrostro. (Cmplt. p. 9.) Plaintiff alleged that Freitas told Capriola that Plaintiff had a seizure disorder, pretended to be sick and disabled, and engaged in in-home supportive services fraud regarding which the heirs were going to testify and obtain a conviction. Capriola called for paramedic assistance to help Plaintiff open the door, but Plaintiff told the paramedics that she did not need medical care. Defendant Deputy Sheriff Robert Buenrostro informed Plaintiff that if she did not open the door, she would be arrested for obstruction of justice. (Cmplt. pp. 1-4.)

Plaintiff alleges that the heirs and the law enforcement defendants (Capriola, Buenrostro, Wilkins, Sheriff Margaret Mimms, Governor Arnold Schwarzenegger, and Attorney General Edmund G. Brown) conspired to deprive Plaintiff, who is disabled, of her interest in real property without prior notice or hearing or a showing of exigent circumstances. (Cmplt. pp. 4-5.)

They also authorized the cessation of PG&E services to the property. Plaintiff alleges that causing her to become homeless was a violation of the Fourteenth Amendment and constituted discrimination pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. Plaintiff sues not only the heirs and the law enforcement defendants, but also Bonnie Anderson, Anderson's employers, Darryl Horowitt and William Coleman, and the Law Firm of Coleman & Horowitt (law firm defendants), who were Plaintiff's former employer in 2002, who allegedly wrongfully terminated Plaintiff, and who remain a party to a Worker's Compensation proceeding; until December 2007 they were counsel to Defendant Freitas and the other heirs. (Id. p. 29.) Plaintiff alleges that

6

a conflict of interest existed and was presented to the state superior court on November 13, 2007. (Id.) These defendants are alleged to have "aided, abetted, collaborated, and conspired" (id. p. 28) with the heirs in "formulating the fraudulent allegation" (id.) that Plaintiff had continued to deny family members access to the premises, in violation of ethical regulations and the probate code, (id.).

In December 2007, Plaintiff filed a petition for probate of a will or lost will and letters testamentary. (A.R. 33.) However, Defendant Freitas has been appointed executor pursuant to a will that was allegedly lost and then found at the premises; Freitas is represented by Defendant J. Stanley Teixera, who is also sued herein. (Id. at 42-43.) Plaintiff alleges that her own documentation of the leave and option agreement was removed from the premises by the heirs and with the assistance of the law enforcement defendants. She also alleges that Defendants deprived her of various specific property rights, such as the right to determine who would be permitted to visit her (id. at 56), her tenancy (id. at 58-60), state statutory rights to continued enjoyment of the premises (id. at 60-63) and consent to enter (id. at 64-69), and right to possession of personal property on the premises (id. at 70-72). She alleges that Defendants violated due process by conspiring to assault and terrorize her. (Id. at 72-73.) Plaintiff asserts that the law enforcement defendants did so in order to encourage the heirs to testify against Plaintiff in an upcoming criminal case. (Id. p. 73-76.)

Plaintiff alleges that the heirs broke in to the premises on or about January 22, 2008, after having told the sheriff's

7

department that they were residents of the premises; they were
responsible in some fashion for shutting off, and maintaining the
disruption of, utility service at the premises since September
2007, and for assaulting and threatening plaintiff in the course
of their forcible entry of the premises (id. pp. 33-40); these
matters were all brought before the state court in the probate
proceedings, (id. p. 42). Additional, allegedly unauthorized
entries on to the premises were made by the heirs in May 2008
after Defendant Frankie Freitas was appointed administrator and
filed letters testamentary, including one entry that resulted in
discovery of a will offered for probate by the heirs. (Cmplt. pp.
42-44.)

       Plaintiff alleges that Defendants interfered with her right
to peaceful enjoyment of her lease in violation of the Fourteenth
Amendment's due process protection by terminating her interest
under the lease without notice and a fair hearing. (Id. pp. 46-
47.) Plaintiff alleges other, separate claims for violation of
due process. Plaintiff alleges that Defendants' seeking to
terminate the lease has violated Plaintiff's First Amendment
rights to freedom of association, privacy, and personal autonomy.
(Id. at 48-50.) Plaintiff asserts separate due process claims
based on the permitting of the heirs to enter and to oust
Plaintiff on or about October 17, 2007, without authorization and
without statutory pre-eviction proceedings, in violation of her
Fourth Amendment rights and otherwise as part of a pattern of
unspecified discriminatory practices, and as a result of improper
training. (Id. at 50-60.)

       Governor Schwarzenegger allegedly failed to train and

8

supervise unspecified persons within his control, as did Attorney
General Brown, Sheriff Mimms, and Defendants Wilkins and
Buenrostro. (Id. at 78-82.) Private attorneys Darryl Horowitt,
William Coleman, and Stanley Teixera likewise are alleged to have
failed to train and supervise, (id. pp. 83-85), as is Defendant
Freitas (id. at 85).

Plaintiff alleges numerous claims pursuant to the Americans
with Disabilities Act, Title II, concerning the administration of
unspecified services and programs and violation pursuant to 42
U.S.C. § 12131 and 12132, and consisting of being displaced or
living with family, which is not the most integrated setting
appropriate to her needs. (Id. pp. 87-90.)

Similarly vague claims are set forth concerning the
Rehabilitation Act. (Id. at 90-93.) Plaintiff alleges that the
defendants violated the federal Fair Housing Act by inquiring
concerning disability and intentionally discriminating against
people with disabilities and retaliating, interfering, and
harassing Plaintiff because of her exercise of rights under the
Act. (Id. p. 45.) Plaintiff alleges that Defendants discriminated
against her on the basis of "familial status." (Id. at 93-95.)

Plaintiff also alleges what are described as pendant state
claims (id. at 96), including interruption and termination of
utility services, interruption of her use of the premises,
conversion, breach of contract, conspiracy, fraud, and unfair
business practices. (Id. at 96-124.) Plaintiff also alleges fraud
and conspiracy claims against the lawyers and law firms who
advised the heirs to consider the alleged lease and option
agreement void, (Id. at 124-28.) Plaintiff alleges unfair

9

business practices and asserts a right to treble damages because
of wrongful conduct against a disabled person. (Id. at 128-31.)
Finally, she alleges a claim for negligent infliction of
emotional distress. (Id. at 131-133.)

Plaintiff seeks declaratory and injunctive relief concerning
the lease agreement, as well as damages. (Id. 133-42.)

Appended to the formal allegations, which alone fill up 142
pages, are an additional 131 pages consisting of numerous
documents relating to the allegations of the complaint.

II. Abstention or Lack of Subject Matter Jurisdiction

In her nine-page prayer for relief (Cmplt. pp. 133-42),
Plaintiff seeks, inter alia, restitution for the amount of the
residential lease and option to purchase, and declaratory relief
to the effect that the heirs are required to perform the
provisions of the lease and are trespassers with respect to the
property. (Id. at 136-37.)

It is not clear whether or not the probate proceeding
remains pending in the state court. However, due to recency of
actions occurring in that proceeding that are described in the
complaint, it is likely that the probate proceeding was ongoing
at the time the action was filed here.

Assuming that the probate proceeding is ongoing, then the
Court finds that abstention is appropriate, and it will recommend
that the Court decline to exercise jurisdiction over Plaintiff's
action.

The Younger abstention doctrine is a common law equitable
doctrine articulated in Younger v. Harris, 401 U.S. 37, 49-53
(1971), holding that absent extraordinary circumstances, federal

courts will and generally should refrain from interfering with a pending state court proceeding. Poulos v. Caesars World, Inc., 379 F.3d 654, 669 n.4 (9th Cir. 2004). Younger abstention is required if 1) state proceedings are ongoing, 2) the proceedings implicate important state interests, and 3) the state proceedings provide an adequate opportunity to raise federal questions. Wiener v. County of San Diego, 23 F.3d 263, 266 (9th Cir. 1994). Under such circumstances, the correct remedy is to dismiss the action. Wiener, 23 F.3d at 266. Younger abstention has been applied to ongoing state judicial proceedings, including probate proceedings. Snyder v. Altman, 444 F.Supp. 1269, 1271 (C.D.Cal. 1978) (administration of ongoing probate conservatorships). The Younger doctrine has also been applied to state administrative proceedings if they are judicial in nature, that is, they investigate, declare, and enforce liabilities as they stand on present or past facts and under law supposed already to exist. New Orleans Public Services, Inc.a v. Council of New Orleans (NOPSI), 491 U.S. 350, 370-71 (1989); Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1272 (9th Cir. 1994).

Here, it is clear that the premises and the alleged lease and option to purchase were assets of the probate estate and thus were or are subject to the state court's jurisdiction. (Cmplt., p. 26-27; Doc. 1-2, pp. 56-59, 66, 70-71, 84-85, 121.)

The state has an important state interest in governing family relationships and settling the estates within its jurisdiction. Snyder v. Altman, 444 F.Supp. 1269, 1271 (C.D.Cal. 1978). It has also been determined that probate, trusts, estates, and property law concerns are important state interests

justifying <u>Younger</u> abstention because they are interests that the Constitution and our traditions primarily assign to the states, and they involve functions which make our states self-governing sovereigns. <u>Harper v. Public Service Commission of West Virginia</u>, 396 F.3d 348, 352-53 (4th Cir. 2005) (collecting cases).

Further, federal constitutional claims may be raised in the state court proceedings. <u>See</u>, Cal. Prob. Code § 800 (providing that probate courts are courts of general jurisdiction with same power and authority with respect to the proceedings as otherwise provided by law for a superior court, or a judge thereof). It appears that Plaintiff has participated in the probate proceeding, setting forth her complaints concerning the heirs' conduct with respect to the premises. (Cmplt. p. 42, ¶ 163.) Plaintiff also filed a petition for probate of a will in December 2007. (Cmplt., p. 33, ¶ 130.) It is presumed that state court proceedings are adequate to raise the federal claim in the absence of unambiguous authority to the contrary. <u>Pennzoil v. Texaco, Inc.</u>, 481 U.S. 1, 15 (1987). In light of the presumption and the record before this Court, the Court finds that Plaintiff had a full and fair opportunity to litigate her constitutional claims in the state court probate proceedings.

The Court does not understand Plaintiff's complaint to seek relief in this Court with respect to a worker's compensation proceeding mentioned by Plaintiff. Plaintiff alleged that a worker's compensation proceeding was pending against Defendant Coleman and Horowitt, LLP, as the defendant employer. (Cmplt. p. 20, ¶ 93.) Plaintiff's rambling allegations concerning the proceeding reveal that Plaintiff was assaulted by a co-worker in

2002 while employed by Defendant Coleman and Horowitt; the
employer had failed to effectuate her medical coverage in a
timely manner; the employer's physician was negligent, which
resulted in recovery in a state court proceeding on a theory of
negligence against the physician; Plaintiff then applied for
workers compensation benefits in 2003, alleging additionally that
the employer discriminated her and wrongfully terminated her
employment while she was off work due to an industrial injury; a
temporary restraining order was sought but apparently not
obtained by the employer against Plaintiff because Plaintiff had
attempted a voluntary commitment because of dreams of killing
everyone in her employer's office with a semi-automatic rifle;
the proceedings did not result in an adjudication before 2005,
and it is not clear whether or not the action was stayed because
Plaintiff was a vexatious litigant and had not complied with a
prefiling order  (Cmplt. pp. 29-33, 33.) The worker's
compensation proceedings are not mentioned after December 2007 in
Plaintiff's chronology of the pertinent events; at that time
Defendant Coleman & Horowitt, LLP, withdrew as Defendant Freitas'
attorney of record, and Defendant J. Stanley Teixera became
Frankie Freitas' attorney of record. (Cmplt. p. 33, ¶ 129.)

        Thus, because it does not appear that Plaintiff is seeking
affirmative relief from this Court with respect to matters
relating to a worker's compensation proceeding, the Court will
not perform a Younger analysis in connection with Plaintiff's
allegations concerning that portion of her history with Defendant
Coleman & Horowitt, LLP.

1    The extent to which Plaintiff is seeking to revisit any
2    past, final rulings of a probate court is unclear. However, if
3    Plaintiff is attempting to seek relief from this Court with
4    respect to any completed state proceeding, it appears that many
5    rulings and matters that are inextricably entertwined with the
6    state probate proceeding are the subject of the complaint here.
7    Plaintiff is attempting to sue the heirs, the law firm
8    defendants, and the law enforcement defendants for breach of the
9    lease and option to purchase contract regarding real property
10   that is a probate asset. (Cmplt. pp. 111-14, 66.) Further,
11   Plaintiff complains of the disposition of property that was
12   inside the house and which appears to be listed as a probate
13   asset. (Cmplt. p. 66.)

14       To the extent that Plaintiff seeks to reverse rulings of the
15   probate court, the Court informs Plaintiff that generally the
16   settlement and distribution of decedents' estates and the right
17   to succeed to the ownership of realty and personalty are
18   peculiarly matters of state law; the federal courts generally
19   have no probate jurisdiction, even in diversity jurisdiction
20   cases. Harris v. Zion's Bank Co., 317 U.S. 447, 450 (1943).

21       Appellate jurisdiction of state court judgments rests in the
22   United States Supreme Court, 28 U.S.C. § 1257, not in the federal
23   district court. The Rooker-Feldman doctrine derives its name from
24   Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District
25   of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The
26   doctrine provides that a federal district court is without
27   subject matter jurisdiction to hear an appeal from the judgment
28   of a state court. Bianchi v. Rylaarsdam, 334 F.3d 895, 896

1  (2003), <u>cert.</u> <u>denied</u>, <u>Bianchi v. Rylaarsdam</u>, 540 U.S. 1213,

2  (2004). If claims raised in the federal court action are

3  "inextricably intertwined" with the state court's decision such

4  that the adjudication of the federal claims would undercut the

5  state ruling or require the district court to interpret the

6  application of state laws or procedural rules, then the federal

7  complaint must be dismissed for lack of subject matter

8  jurisdiction. <u>Bianchi v. Rylaarsdam</u>, 334 F.3d at 898. A claim is

9  inextricably intertwined with a state court judgment if the

10  federal claim succeeds only to the extent that the state court

11  wrongly decided the issues before it, or if the relief requested

12  in the federal action would effectively reverse the state court

13  decision or void its ruling. <u>Fontana Empire Center, LLC v. City</u>

14  <u>of Fontana</u>, 307 F.3d 987, 992 (9th Cir. 2002).

15      The Rooker-Feldman doctrine is confined to cases brought by

16  state-court losers complaining of injuries caused by state-court

17  judgments rendered before the district court proceedings

18  commenced and inviting district court review and rejection of

19  those judgments. <u>Exxon Mobil Corp. v. Saudi Basic Industries</u>

20  <u>Corp.</u>, 544 U.S. 280, 125 S.Ct. 1517, 1522 (2005). Rooker-Feldman

21  may apply where the plaintiff in federal court claims that the

22  state court did not have jurisdiction to render a judgment. See

23  <u>Olson Farms, Inc. v. Barbosa</u>, 134 F.3d 933, 936 (9th Cir. 1998).

24      It appears from Plaintiff's complaint that to a great

25  extent, she is seeking a review of a determinations made by the

26  state court in the course of the state court suit, or matters

27  inextricably intertwined with the state court judgment. To the

28  extent that any such determinations are final and proceed from a

1 completed judicial proceeding, this Court lacks jurisdiction to

2 conduct such a review.

3     Therefore, this Court either should decline to exercise

4 jurisdiction, or should conclude that it lacks subject-matter

5 jurisdiction over much of what Plaintiff claims constitutes a

6 violation of due process, or of other federally protected rights,

7 in connection with the determination of state property rights in

8 probate assets.

9     Further, because of the nature of the claims Plaintiff seeks

10 to assert, all of which appear to be inextricably bound up with

11 the probate proceeding, it does not appear that Plaintiff could

12 allege facts that would present grounds for jurisdiction in this

13 Court concerning the determination of the issues concerning

14 property rights in the state probate proceeding or any other

15 state legal proceeding concerning the property rights.

16     The Court will therefore recommend the dismissal of

17 Plaintiff's second through seventh claims[2], which are brought

18 pursuant to § 1983 and which concern alleged violations of due

19 process of law resulting in deprivations of federally protected

20 rights.

21     III. <u>Civil Rights Claims pursuant to 42 U.S.C. § 1983</u>

22     In addition to the previous recommendation to dismiss

23 Plaintiff's claims involving the state procedures concerning the

24 entitlement to, and distribution of, probate assets, there are

25 additional reasons to dismiss Plaintiff's civil rights claims.

26     The Civil Rights Act pursuant to which many of the claims in

27

28       [2] Although the title of the seventh claim refers to a statutory violation of Cal. Civ. Code § 1927, the claim itself is more generally stated as one for deprivation of due process of law resulting in deprivation of property.

this action were filed provides:

> Every person who, under color of [state law]...
> subjects, or causes to be subjected, any citizen of the
> United States... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution... shall be liable to the party injured in
> an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983. To state a claim pursuant to § 1983, a

plaintiff must plead that defendants acted under color of state

law at the time the act complained of was committed and that the

defendants deprived the plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United

States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.

1986).

## A. Deprivation of Rights derived from State Law

In claims eight through eleven, Plaintiff alleges that the

Defendants' lack of notice and hearing resulted in violation of

rights allegedly stemming from specific state statutes, including

but not limited to Cal. Civ. Code §§ 1927, former §§ 1159-1160,

former Cal. Civ. Proc. Code § 1954, Cal. Pen. Code §§ 240 & 242,

To state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the

United States and must show that the alleged deprivation as

committed by a person acting under color of state law. West v.

Atkins, 487 U.S. 42, 48 (1988). Section 1983 does not provide a

cause of action for deprivations of rights protected only under

state law. Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001)

(holding that an allegation of illegal search and seizure in

violation of Fourth Amendment rights due to the lack of

qualification under state law [Cal. Veh. Code § 23158] of the

17

person drawing the plaintiff's blood did not state a claim under
§ 1983 because it alleged violation of a standard beyond the
Fourth Amendment and did not allege unreasonableness under Fourth
Amendment standards). However, where a violation of state law is
also a violation of a Constitutional right, then § 1983 does
provide redress. Lovell v. Poway Unified School District, 90 F.3d
367, 370-71 (9th Cir. 1996) (although a state statute ensured a
student the same right to exercise the right to free speech on
campus as was enjoyed when off campus, the First Amendment
guaranteed only limited protection for student speech in the
school context, and a claim was stated only because the First
Amendment's standards were also violated).

     To the extent that Plaintiff seeks to obtain relief for
violations only of rights protected by state law but not by
federal law, claims eight though eleven should be dismissed.

                    B. Action under Color of State Law

     To state a claim under section 1983, a plaintiff must plead
(1) that the defendant acted under color of state law and (2)
that the defendant deprived him of rights secured by the
Constitution or federal statutes. Gibson v. United States, 781
F.2d 1334, 1338 (9th Cir. 1986). Generally, private parties are
not acting under color of state law. See Price v. Hawaii, 939
F.2d 702, 707-08 (9th Cir. 1991). However, "[a]ction taken by
private individuals may be 'under color of state law' where there
is 'significant' state involvement in the action." Howerton v.
Gabica, 708 F.2d 380, 382 (9th Cir. 1983).

     Here, Plaintiff has made conclusory assertions regarding
conspiracy. A conspiracy between a private party and a state

official to deprive others of constitutional rights may result in action by a private party under color of state law, but to prove a conspiracy between the state and private parties under section 1983, the Plaintiff must allege an agreement or meeting of the minds to violate constitutional rights; each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc). The defendants must by some concerted action have intended to accomplish some unlawful objective for the purpose of harming another which results in damage. Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

Here, Plaintiff alleges that the heirs made wrongful and fraudulent statements to, and lied to, the law enforcement officers; it is not alleged that the officers or officials who acted under color of state law shared the wrongful intent of the private Defendants. Accordingly, Plaintiffs have not alleged a claim pursuant to § 1983 because Plaintiffs have not alleged facts warranting an inference that the Defendants acted under color of state law.

This defect is present in each of the civil rights claims which would arguably provide subject matter jurisdiction in this Court.

### C. Conspiracy to Violate Equal Protection

Plaintiff also alleges in a much later portion of the complaint that Defendants, and all of them, conspired to violate, and did violate, Plaintiff's right to equal protection of the

laws in violation of 42 U.S.C. § 1983 and 1985. (Cmplt. pp. 115-18.) Plaintiff incorporates by reference the first 173 allegations of the complaint and then concludes with the conclusional allegations that as a result of the malicious conspiracy, all defendants violated her right to equal protection. (Id.)

### 1. Section 1983

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,

20

1  1965 (2007) (citations omitted).  A plaintiff must set forth "the
2  grounds of his entitlement to relief[,]" which "requires more
3  than labels and conclusions, and a formulaic recitation of the
4  elements of a cause of action . . . ."  Id. at 1964-65 (internal
5  quotations and citations omitted).  As such, a bare allegation
6  that defendants conspired to violate plaintiff's constitutional
7  rights will not suffice to give rise to a conspiracy claim under
8  section 1983.

9       Here, Plaintiff did not set forth facts showing any
10 agreement or shared intent on the part of the alleged
11 conspirators. Further, it is not clear how the governor, the
12 attorney general, the sheriff's department, the county, or the
13 sheriff participated in any conspiracy.

14      Finally, Plaintiff alleged the violation of equal protection
15 of the laws in a purely conclusory fashion. Plaintiff has not
16 stated any facts indicating how she suffered a denial of equal
17 protection of the laws.

18               2. Section 1985

19       A claim brought for violation of section 1985(3) requires
20 "four elements: (1) a conspiracy; (2) for the purpose of
21 depriving, either directly or indirectly, any person or class of
22 persons of the equal protection of the laws, or of equal
23 privileges and immunities under the laws; and (3) an act in
24 furtherance of this conspiracy; (4) whereby a person is either
25 injured in his person or property or deprived of any right or
26 privilege of a citizen of the United States." Sever v. Alaska
27 Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (citation
28 omitted). A racial, or perhaps otherwise class-based, invidiously

1   discriminatory animus is an indispensable element of a section

2   1985(3) claim. Sprewell v. Golden State Warriors, 266 F.3d 979,

3   989 (9th Cir. 2001) (quotations and citation omitted).

4        Here, as previously noted, the allegations of conspiracy are

5   conclusional. A mere allegation of conspiracy is insufficient to

6   state a claim. Holgate v. Baldwin, 425 F.3d 671, 676-77 (9th Cir.

7   2005) (citation omitted).

8        Further, there is no racial animus alleged. Restraint must

9   be exercised in extended section 1985(3) beyond racial prejudice.

10  Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (citation

11  omitted).

12              D. Due Process

13       If it were concluded that Plaintiff could allege due process

14  claims separate from the state court probate proceedings and thus

15  could state grounds for subject matter jurisdiction in this

16  Court, then the Court should address Plaintiff's repeated

17  allegations of deprivations of rights under the lease agreement

18  resulting from the failure of the sheriffs to arrest the heirs in

19  October 2007. Although many claims are repeated, Plaintiff

20  alleges what amounts to essentially a single claim of deprivation

21  of her rights under the lease and option agreement without due

22  process of law.

23       The elements of a claim based on deprivation of procedural

24  due process are a liberty or property interest protected by the

25  Constitution, a deprivation of the interest by the government,

26  and lack of due process. Portman v. County of Santa Clara, 995

27  F.2d 898, 904 (9th Cir. 1993). With respect to claims regarding

28  procedural due process, several factors are weighed in

determining what procedural protections are required in particular circumstances:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). A hearing is often thus required before a deprivation can occur. See, e.g., Fuentes v. Shevin, 407 U.S. 67 (1972) (need for hearing before prejudgment replevin regarding possessory interests in property). However, in circumstances where quick action by the state is necessary, or where providing any pre-deprivation process is impractical, post-deprivation hearings or tort remedies satisfy due process. Zinermon v. Burch, 494 U.S. 113, 128 (1990). Such circumstances include where the loss results from a random and unauthorized act of a state employee, such as where the loss is not the result of some established state procedure, and the state cannot predict precisely when the loss will occur. Zinermon v. Burch, 494 U.S. at 129 (discussing Paratt v. Taylor, 451 U.S. 527 (1981), overruled in part by Daniels v. Wiliams, 474 U.S. 327, 330-31 (1986)).

Here, with respect to the law enforcement defendants, the deprivation addressed by Plaintiff is the failure of sheriff's officers responding to Plaintiff's emergency call to provide a hearing before a decision was made as to whether or not Plaintiff's possession was entitled to full protection. The Defendant officers were faced with a need to determine on the

spot whose conflicting claim of right was ascendant. There was no
allegation that the officers were enforcing an order of the
probate court or that it was otherwise pursuant to some
established state procedure that the officers acted or failed to
act. Freitas claimed to be the named administrator of the estate,
displayed a petition for probate of a will (Cmplt. p. 21), and
made other representations that Plaintiff alleges were fraudulent
but which caused Freitas to appear to have a claim to the
possession of the premises.

The Court concludes that under the emergency circumstances
facing the law enforcement defendants, who were called upon by
Plaintiff to determine immediately the respective rights of the
parties, it was not possible or reasonable for the law
enforcement defendants to provide for meaningful, immediate pre-
deprivation procedures. In these circumstances, Plaintiff has not
made out a procedural due process claim, which requires not only
deprivation of an interest protected by the Due Process Clause of
the Fourteenth Amendment, but also deprivation of the interest
without due process of law. Here, post-deprivation remedies of
resort to legal authority through tort law, as well as probate
and contract law, were necessarily adequate. Compare, Martinez v.
Sonoma-Cutrer Vineyards, 557 F.Supp. 451 (D.C.Cal. 1983).

Because no claim against the law enforcement defendants is
made, it is also concluded that Plaintiff stated no claim with
respect to the private actors.

E. Sovereign Immunity

An unconsenting state is immune from suits brought in
federal courts by her own citizens as well as by citizens of

24

another state. <u>Pennhurst State School & Hosp. v. Halderman</u>, 465
U.S. 89, 100 (1984). A suit against a state official in his or
her official capacity will be barred by the Eleventh Amendment
where the state is the real, substantial party in interest. <u>Id.</u>
at 101. Generally, relief sought nominally against an officer is
in fact against the sovereign if the decree would operate against
the latter. <u>Id.</u> The general rule is that a suit is against the
sovereign if the judgment sought would expend itself on the
public treasury or domain, or interfere with the public
administration, or if the effect of the judgment would be to
restrain the government from acting or to compel it to act. <u>Id.</u>
at n. 11 (citing <u>Dugan v. Rank</u>, 372 US. 609, 620 (1984)).

Here, Plaintiff sues the governor of the state of California
and the Attorney General of California in their official
capacities. (Cmplt. ¶¶ 46, 47.) A suit against them in their
official capacity for damages is barred because it would
ultimately operate against the public treasury; therefore, they
have immunity under the Eleventh Amendment from such a suit.

To the extent that a suit for prospective injunctive relief
for violating federal law is brought against a state official who
is sued in his or her official capacity, it is established that a
suit for prospective injunctive relief against a state official
provides a narrow but well-established exception to Eleventh
Amendment immunity. <u>Pennhurst State School & Hosp. v. Halderman</u>,
465 U.S. 89, 102.

Therefore, to the extent that these officers are sued for
prospective injunctive relief, they are not immune from suit.
However, Plaintiff cannot state a claim against them in their

1  official capacity for damages.

2          F. <u>Untrue or Fanciful Allegations of Fact</u>

3          Further, Plaintiff has made some allegations that appear to

4  be factually fanciful or to be in bad faith or malicious. For

5  example, Plaintiff alleged that Governor Schwarzenegger, Attorney

6  General Brown, the County of Fresno, the Fresno County Sheriff's

7  Department, and Defendant Margaret Mimms forcibly entered and

8  took possession of a residence. (Cmplt. p. 61, ¶ 226; p. 67, ¶

9  243.) Similarly, Plaintiff alleged that the officials forcibly

10 entered and took possession of the subject premises and of

11 Plaintiff's personal property on May 1, 2008. (<u>Id.</u> at p. 71, ¶

12 258.) Plaintiff alleged that the governor, attorney general, the

13 county, the sheriff's department, and the sheriff herself refused

14 to rent the subject premises to Plaintiff and imposed different

15 rental terms and conditions on Plaintiff because of "familial

16 status." (Cmplt. ¶ 386-87.)

17         Some of these allegations, such as those concerning the

18 presence of departments or local governmental entities such as

19 the county, are clearly factually fanciful. Thus, they are

20 subject to dismissal as frivolous.

21         Other allegations are quite questionable. It is highly

22 unlikely that the governor, the attorney general, and the sheriff

23 herself were all present at any of the events referred to in

24 Plaintiff's complaint. Further, Plaintiff alleged that she had

25 entered into a lease and option to purchase the premises with the

26 decedent; thus, it would not be possible that the law enforcement

27 defendants had any interest sufficient to enter into a rental or

28 lease agreement with the Plaintiff. It therefore appears highly

26

likely that the complaint contains untrue material allegations of fact, or false statements, made with knowledge and an intent to deceive the Court. If these facts are baseless, any claim based on them is subject to dismissal as frivolous.

Further, a complaint may be inferred to be malicious if it suggests an intent to vex the defendants or abuse the judicial process by relitigating claims decided in prior cases. See, Crisafi v. Holland, 655 F.2d 1305, 1309 (D.C.Cir. 1981). It appears that Plaintiff is attempting to relitigate matters that are being litigated, or were litigated, in the state court in a probate or property proceeding. Further, it appears that Plaintiff has filed multiple actions in this Court involving many governmental entities and officials with few allegations of fact and many vague, conclusory statements.[3] Finally, it is noted that Plaintiff herself alleges that she had been found to have been a vexatious litigant in state court. (Cmplt. p. 33.)

Plaintiff's good faith is reasonably questioned, and to the extent that Plaintiff files an amended complaint, Plaintiff IS FOREWARNED that any further untrue allegations of material fact, and baseless efforts to relitigate matters that were the subject of state-court probate or property litigation, will in all likelihood result in a finding of bad faith and dismissal of the specific claims and even of entire action.

IV. Americans with Disabilities Act

Plaintiff alleges numerous claims concerning the Americans

---

[3] Plaintiff's other actions include 1: 08cv1289-OWW-DLB, 1:06cv1260-AWI-LJO, 1:07cv972-AWI-DLB, and 1:08cv1290-LJO-GSA; see the Findings and Recommendation Regarding Dismissal of Action filed on October 6, 2008, in 1:08cv1289-OWW-DLB.

with Disabilities Act and Rehabilitation Act. Plaintiff alleges generally and vaguely in claims twelve through twenty that Defendants Governor Schwarzenegger, Attorney General Brown, Sheriff Mimms, Deputy Sheriff Wilkins and Buenostro, private attorneys Horowitt, Coleman, Taxeira, and Defendant Freitas all were charged with supervising and training persons in their employ so that the laws and regulations concerning operating California's service systems in conformity with the ADA and the Rehabilitation Act would be followed; they failed adequately to train and supervise persons in their control, and did so wantonly and recklessly so as to display a conscious indifference to property loss and injury. (Claims twelve through 20.) Thereby, Plaintiff was deprived of notice.

Plaintiff also alleges in claims twenty-two through twenty-five that the law enforcement defendants were responsible for operating public entities covered by Title II of the ADA, had responsibilities under the Act to operate without discrimination, to provide unspecified services and programs in the most integrated setting that was safe and appropriate to the needs of qualified individuals with disabilities, and that Defendants failed to perform these duties because they required Plaintiff to be displaced or live with family, and discriminated against her because of her mental illness in evicting her from her home and excluding her from the benefits of her lease and option to purchase.

Title II, 42 U.S.C. § 12132, applies to the public sector and states essentially that no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. To establish a violation of Title II of the ADA, a plaintiff must show that he or she 1) is a qualified individual with a disability, 2) was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and 3) such exclusion or discrimination was by reason of the disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Plaintiff makes numerous general allegations concerning general administration of unspecified programs and activities. (Cmplt. pp. 87-88.) Plaintiff alleges generally that the law enforcement defendants utilized methods of administration that had the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability or that have the purpose or effect of defeating or substantially impairing accomplishment of the objective of the public entity's program with respect to individuals with disabilties; Defendants perpetuated the current eviction system rather than facilitate the receipt of services in the most integrated setting appropriate to the needs of Plaintiff and resulted in displacement into a setting that is segregated, unsafe, unsanitary, and inappropriate. (Cmplt. p. 88.)

Plaintiff's allegations are conclusional; they are not allegations of specific fact. Plaintiff repeated by reference 173 paragraphs of allegations and then stated her allegations in the vague wording on page 88 of the complaint. Plaintiff has not alleged facts showing that she is a qualified individual with

disabilities, was discriminated against with regard to a specific public entity's specific services, programs, or activities, or that any such exclusion or discrimination was by reason of the disability.

Plaintiff's allegations are so unclear that it is impossible to discern what actions were undertaken by what people. Plaintiff states that the law enforcement defendants discriminated against Plaintiff on the basis of her mental illness by refusing to give Plaintiff an opportunity to be heard before being evicted from her home. (Id. at 88-89.) However, the law enforcement defendants were called to the home by Plaintiff, and it does not appear that they did what they did because of any disability suffered by Plaintiff; rather, they acted with reference to a property dispute based on the status of the property and probate proceedings pending in state court. Again, it is unclear what program Plaintiff is talking about; the only activity engaged in by law enforcement was responding to Plaintiff's call and refusing to arrest the heirs, but the allegations appear to refer to some entity's housing program. However, it does not appear that the law enforcement defendants were providers of housing to Plaintiff.

Further, Plaintiff names individuals as defendants. However, the statute provides for redress by public entities. The ADA defines "public entity" in pertinent part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(a)(A)-(B). Further, a "public entity," as defined in Title II, does not include individuals in

their individual capacities, and a plaintiff may not pursue an ADA claim against individual defendants named in the complaint. 42 U.S.C. § 12131(1); <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that a public official may not be sued in his or her individual capacity under § 1983 for violations of the ADA or § 504 of the Rehabilitation Act because by defining claims as claims against public entities under those statutes, Congress intended to limit enforcement to claim against public entities, and thus the more generalized recovery mechanism of § 1983 was not available).

Plaintiff's allegations do not raise a right to relief above the speculative level, provide plausible grounds to suggest and infer the elements, or raise a reasonable expectation that discovery will reveal evidence of the required element.

Finally, Plaintiff refers in passing to a state practice of knowingly foreclosing Plaintiff's defense to an eviction proceeding (Cmplt p. 89); however, because of the conclusory nature of the allegations, what Plaintiff refers to is unclear.

The Court concludes that Plaintiff's allegations concerning disability are so vague, conclusional, and uncertain that Plaintiff fails to state a claim based on the ADA in claims twelve through twenty-five.

V. <u>Rehabilitation Act</u>

In claims twenty-six through twenty-nine, Plaintiff alleges that the law enforcement defendants violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794. She also vaguely alleges that the law enforcement defendants failed to supervise and train persons responsible to them to ensure that unspecified services

were delivered in conformity with the ADA and Rehabilitation Act (claims twelve through 20). She alleges that the Defendants subjected her to discrimination because she refused to allow the heirs in to her residence, failed to administer services to her in the most integrated setting appropriate for her, and discriminated against her on the basis of mental illness by failing to take adequate measures.

The Rehabilitation Act, 29 U.S.C. § 794, applies to entities that receive federal financial assistance. Section 794(a) provides that no otherwise qualified individual with a disability in the United States, as defined by section 705(20) of the title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving federal financial assistance.

To establish a violation of the Rehabilitation Act, 29 U.S.C. § 794 (section 504 of the Rehabilitation Act), a plaintiff must show that he or she 1) is handicapped within the meaning of the Rehabilitation Act, 2) is otherwise qualified for the benefit or services sought, 3) was denied the benefit or services solely by reason of her handicap, and 4) the program providing the benefit or services receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

The same standards with respect to rights, remedies, and procedures apply to Rehabilitation Act claims as are applied under § 12132 (Title II) of the ADA. 42 U.S.C. § 12133. Thus, the same remedies are available for violations of Title II of the ADA and § 504 of the Rehabilitation Act. 42 U.S.C. § 12133. The

remedies, in turn, are the same as those set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. 29 U.S.C. § 794a(a)(2); <u>Lovell v. Chandler</u>, 303 F.3d at 1055. Pursuant to case law under Title VI, compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent that constitutes deliberate indifference, which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. <u>Lovell v. Chandler</u>, 303 F.3d at 1055. Further, one cannot seek damages or injunctive relief pursuant to either the ADA or Rehabilitation Act against defendants in their individual capacities. <u>See</u>, <u>Eason v. Clark County School Dist.</u>, 303 F.3d 1137, 1145 (9th Cir. 2002).

Plaintiff alleged that the Act was violated because Plaintiff was qualified to participate in more integrated community residential programs that met her mental health needs, but Defendants failed to administer services to Plaintiff in the most integrated setting appropriate for her. (Cmplt. pp. 90-91.) Plaintiff further alleged that they used methods that subjected individuals with disabilities to discrimination and that "perpetuate the current eviction system" and result in displacement of families. (<u>Id.</u> at 91.)

In another attempt to state a claim, Plaintiff alleged that the defendants were guilty of "failing to take adequate measures to redress the use of law enforcement personnel to assist with self-help evictions that is not tolerated in rental units that primarily serve individuals with physical disabilities." (Cmplt. p. 92.) She also appears to allege that the state knowingly used

law enforcement personnel to assist with self-help evictions of individuals with serious mental illness because the practice is not tolerated in other state-sponsored facilities that provide housing and services primarily on behalf of persons without mental illness.

Again, Plaintiff's allegations are conclusory and ambiguous. Plaintiff has not alleged facts to the effect that Plaintiff was handicapped within the meaning of the Rehabilitation Act, was otherwise qualified for the benefit or services sought, was denied the benefit or services solely by reason of her handicap, or that the program providing the benefit or services receives federal financial assistance. It is not clear how any of the Defendants was active in providing any community residential programs to Plaintiff or in denying any benefit or services to Plaintiff. Plaintiff's factual allegations are not sufficient, when viewed in light of common experience, to raise a right to relief above the speculative level and to provide plausible grounds to suggest and infer the required element, or to raise a reasonable expectation that discovery will reveal evidence of the required element.

Finally, the Court notes that under the Rehabilitation Act, Plaintiff must allege that the discrimination was due <u>solely</u> to her disability. <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002); <u>compare</u>, <u>Head v. Glacier Northwest, Incorporated</u>, 413 F.3d 1053, 1063-65 (9th Cir. 2005). Here, Plaintiff has not alleged that she was denied service solely because of disability; instead, Plaintiff has alleged numerous other facts that allegedly formed the basis of the defendants' actions.

Accordingly, the Court concludes that Plaintiff failed to state claims pursuant to the Rehabilitation Act in claims twenty-six through twenty-nine.

VI. <u>Derivative Claims</u>

In claims thirty-one and thirty-two, Plaintiff alleges claims for declaratory and injunctive relief that are derivative of the previously alleged claims. These claims fail derivatively to the extent that the claims on which they are based fail to state a substantive claim.

VII. <u>Fair Housing Act Violation</u>

In the first and thirtieth claims, Plaintiff alleges that the defendants, including but not limited to the state officials and local entities, at unspecified times and places violated the federal Fair Housing Act, made illegal inquiries concerning disability, intentionally discriminated against people with disabilities, and retaliated and interfered with Plaintiff because of her exercise of rights under the Act. Plaintiff alleged that they refused to rent the subject premises to Plaintiff and imposed different terms and conditions of rental on Plaintiff because of familial status and thereby violated 42 U.S.C. § 3604(a) through (c). (Cmplt. ¶¶ 175, 385-87.)

Plaintiff attempts to state a claim for discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, and specifically § 3604. Title 42 U.S.C. § 3604(a) through (c) prohibit, because of race, color, religion, sex, familial status, or national origin, a person's refusing to sell or rent a dwelling, discriminating against another person in the sale or rental of a dwelling, or making discriminatory statements

35

with respect to the sale or rental of a dwelling. Section 3604(f)(2) makes it unlawful to discriminate against any person in the provision of services or facilities in connection with his dwelling because of a handicap of that person or any person associated with that person. Discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a disabled person an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604 (f). The inquiry concerning reasonable accommodation is highly fact-specific and requires case-by-case determination. DuBois v. Assocation of Apartment Owners etc., 453 F.3d 1175, 1178-79 (9th Cir. 2006).

To prove a claim pursuant to § 3604(f), a plaintiff must prove 1) that the plaintiff or his or her associate is handicapped within the meaning of 42 U.S.C. § 3602(h); 2) that the defendant knew or should reasonably be expected to know of the handicap; 3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; 4) that the accommodation is reasonable; and 5) that the defendant refused to make the requested accommodation. DuBois, 453 F.3d at 1179.

Here, Plaintiff has alleged only that all defendants refused to rent the premises to her, imposed different terms and conditions of rental on her because of familial status, and made statements that were of a type proscribed by statute. (Cmplt pp. 93-95.) It does not appear that the named defendants were involved in the rental of premises to the Plaintiff, or were persons who were in a position to rent out the premises referred

36

to in the complaint. The requisite states of mind were not
alleged; the allegedly discriminatory terms, the handicap that
required accommodations, or the needed accommodations were not
stated. Although Plaintiff incorporates by reference facts
alleged earlier in the complaint, Plaintiff does not thereby
state specific facts that raise a right to relief above the
speculative level and to provide plausible grounds to suggest and
infer the element, or to raise a reasonable expectation that
discovery will reveal evidence of the required element.

     Accordingly, Plaintiff has failed to state a claim under
this statute.

     VIII. <u>State Claims</u>

     Plaintiff alleges numerous state claims in the remainder of
her extremely verbose complaint, including interruption of
utility services, removing and/or changing locks, and trespass by
a landlord in violation of Cal. Civil Code § 789.3; conversion of
Plaintiff's personal property; breach of contract (lease); fraud
and civil conspiracy; unfair business practices; deceit; and
infliction of emotional distress. (Cmplt., pp. 96-133.)

     The Court will not screen these claims at this juncture
because it is not even clear that Plaintiff can allege facts
making out a claim over which this Court has subject matter
jurisdiction.

     Should Plaintiff file an amended complaint, then the Court
notes that Plaintiff has failed to allege compliance with the
California Tort Claims Act, which requires that a tort claim
against a public entity or its employees be presented to the
California Victim Compensation and Government Claims Board,

formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2008). Presentation of a written claim and action on, or rejection of, the claim are conditions precedent to suit; compliance with the claims presentation requirement is an element of the cause of action, or claim, and failure to allege facts demonstrating or excusing compliance with the requirement subjects a claim against a public entity to a demurrer for failure to state a claim. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1239, 1243 (2004); Mangold v. California Pub. Utils. Comm'n., 67 F.3d 1470, 1477 (9th Cir. 1995). This means that a plaintiff must allege that he has presented a timely claim to the claims board. City of San Jose v. Superior Court, 12 Cal.3d 447, 454 (1974). Because no such allegations are present in the complaint before the Court, any such claims would be subject to dismissal.

IX. Amendment of the Complaint

To the extent that Plaintiff states claims in claims two through seven, claims that are presently the subject of state court proceedings, or are in effect efforts to appeal final state court judgments or matters inextricably intertwined therewith, Plaintiff's claims should be dismissed without leave to amend because the Court either should abstain from exercising jurisdiction, or the Court is without subject matter jurisdiction.

Plaintiff's eighth through eleventh claims also concern the alleged violation of due process of law connected with the state proceedings, but they additionally involve alleged violations of

38

specific, state-protected rights. These claims are also either
subject to abstention from the exercise of jurisdiction, or do
not state grounds for subject matter jurisdiction in this Court.
Because these claims arise from Plaintiff's dissatisfaction with
the state court's rulings in the probate proceeding, it does not
appear that Plaintiff could state claims if given an opportunity
to amend.

     With respect to the claims twelve through twenty-nine,
claims apparently relating to the ADA or Rehabilitation Act, and
claims one and thirty, concerning the Fair Housing Act, it is not
clear whether Plaintiff could allege sufficient facts to state a
claim. Thus, Plaintiff will be given an opportunity to amend
these claims and any derivative claims seeking injunctive or
declaratory relief (claims thirty-one and thirty-two).

     With respect to the adequacy of Plaintiff's statement of
pendent state claims (claims thirty-three through fifty-one), the
Court expresses no opinion at this point because it does not yet
appear that Plaintiff could state grounds for jurisdiction in
this Court or facts stating a claim. Plaintiff may seek to
include state claims in any amended complaint.

     In summary, the Court finds it necessary to dismiss the
complaint in its entirety. Plaintiff has failed to state a
cognizable claim against the defendants and has failed to plead
facts demonstrating jurisdiction in this Court. However, it is
possible that Plaintiff can allege a set of facts, consistent
with the allegations, in support of some of the claims that would
entitle her to relief. Thus, it will be recommended that the
Court grant Plaintiff an opportunity to amend the complaint to

1  cure the deficiencies of this complaint with respect to the
2  first, and twelfth through thirty-second, claims. Failure to cure
3  the deficiencies will result in dismissal of this action without
4  leave to amend.

5      A complaint must contain a short and plain statement as
6  required by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules
7  adopt a flexible pleading policy, a complaint must give fair
8  notice and state the elements of the claim plainly and
9  succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649
10 (9th Cir. 1984). Plaintiff must allege with at least some degree
11 of particularity overt acts which the defendants engaged in that
12 support Plaintiff's claim. Id.

13     An amended complaint supercedes the original complaint,
14 Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997);
15 King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be
16 "complete in itself without reference to the prior or superceded
17 pleading," Local Rule 15-220. Plaintiff is warned that "[a]ll
18 causes of action alleged in an original complaint which are not
19 alleged in an amended complaint are waived." King, 814 F.2d at
20 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814
21 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

22     X. Recommendation

23     Accordingly, it IS RECOMMENDED that

24     1) Plaintiff's second through eleventh claims BE DISMISSED
25 WITHOUT LEAVE TO AMEND on the grounds of abstention from the
26 exercise of jurisdiction, or lack of subject matter jurisdiction;
27 and

28     2) Plaintiff's first and twelfth through thirty-second

1    claims BE DISMISSED WITH LEAVE TO AMEND because they do not state

2    a federal claim upon which relief may be granted; and

3        3) State claims (thirty-three through fifty-one) may be

4    restated in any amended complaint.

5        This report and recommendation is submitted to the United

6    States District Court Judge assigned to the case, pursuant to the

7    provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

8    Local Rules of Practice for the United States District Court,

9    Eastern District of California. Within thirty (30) days after

10   being served with a copy, any party may file written objections

11   with the Court and serve a copy on all parties. Such a document

12   should be captioned "Objections to Magistrate Judge's Findings

13   and Recommendations." Replies to the objections shall be served

14   and filed within ten (10) court days (plus three days if served

15   by mail) after service of the objections. The Court will then

16   review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

17   (b)(1)(C). The parties are advised that failure to file

18   objections within the specified time may waive the right to

19   appeal the District Court's order. Martinez v. Ylst, 951 F.2d

20   1153 (9th Cir. 1991).

21

22   IT IS SO ORDERED.

23   **Dated:   November 24, 2008**              **/s/ Sandra M. Snyder**
                                      UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28